with 21-2597 Connolly v. County of Rockland. Counsel Mr. Parisi, you've reserved three minutes for rebuttal. You may proceed whenever you're ready. Okay. Good morning, Your Honors. May it please the Court. I'm Matthew Parisi. I'm a representative of the Defendants County of Rockland and Catherine Tower Bernstein. This appeal in this case, for that matter, involves three issues and to date two trials. It stems from a letter that 30-plus employees, 16 of whom are the plaintiffs in this case, wrote to a large number of public officials objecting to Rockland County's proposed move of the offices of the Department of Probation to a location that was cheaper but less convenient to the employees. The county responded by sending a memorandum of consent. Plaintiffs now claim that sending the memorandum and holding the meeting was sufficient to establish a First Amendment violation on the part of the county. The liability in this case involved three issues. The first was whether the letter addressed a matter of public concern. At the first trial, Judge Vredel decided that issue for the plaintiffs. The second issue was whether plaintiffs were speaking as private citizens. At the first trial, that issue resulted in a hung jury. But it appears that this appeal concerns only whether there was a materially adverse employment action. Well, there are three points in it but yes, the main point is this, whether there was a material adverse employment action. Your brief is arguing material adverse employment action. Yes, as well as if they were speaking as public employees as well. And the issue on the permanent injunction. But I can address, I'd be happy to address the third issue, material adverse action. On that issue, at the first trial, that issue wasn't reached. On the second trial, the verdict was rendered in favor of the defendants. But thereafter, Judge Vredel reversed the jury verdict and granted judgment in favor of the plaintiffs. The Rule 50 standard is very clear, particularly when it's after a verdict has been rendered in favor of one side or the other. The court must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence on its own. The court should review the record as a whole, but it must disregard all evidence favorable to the moving party that the jury is not required to believe. We submit that the court did the opposite of that and substituted her own judgment for that of the jury in this case. With respect to the material materially adverse employment action, what is the consequence or the meaning of the fact that that is part of progressive discipline? Okay, so our point was that progressive discipline allowed for a series of actions before an employee could be terminated or discharged or really affected in any material way. Nobody wants to be advanced like one step closer to being terminated. That's correct, but it did demonstrate that these plaintiffs had a very stringent series of steps in front of them if they were going to be terminated. Each of the plaintiffs came up to the court and said, we were afraid we were going to be fired when we got this first letter. And the jury realized that that was an exaggeration. They were overdoing what they were doing. It affected their credibility. There was not that case. There would have had to be five different steps before. There would have had to have been a hearing, appeals by the union. These employees were very well protected by the union in this case. We do have some cases, counsel, that sort of refer to a list of materially adverse action, and it includes reprimand. So is the argument don't follow that or is the argument this doesn't constitute a Okay. I would say that, first of all, this is a post-verdict Rule 50 motion, so we have to go back to the other standard. If there's any evidence in the record that supports a jury's determination, it should be your appeal. But on that issue Well, if a matter of law, a reprimand is an adverse material action, none of that really matters. Yes, but there were two trials where this issue was submitted to the jury. The first one hung on this issue. Yeah. It still doesn't matter if, as a matter of law, a reprimand is a material adverse action. Am I right? Or tell me if you see it differently. Well, I see it a little bit differently. The cases talk about classic cases of termination and a bunch of things and then reprimand. Reprimand is sort of, in my view, different than the others on the list. Discharge is clear. You're discharged because you're adversely affected. Here, reprimand has a wide range. I don't think this was a classic case of reprimand, especially in this setting, which the jury had an opportunity to understand fully because of the trial. There was, you know, my kids, you ask them, there's different ranges on reprimand. I reprimand them stringently and I reprimand them less severely. In this case, and given the union protections in place and their understanding that there really was no, there was no opportunity for them to be discharged or any of the other things on the list, that this would not be the classic case of a reprimand. Sorry to interrupt. Is there a distinction in your mind at all about whether this is a reprimand if it's forward-looking versus, and in this case, don't do this in the future versus some criticism for something you did in the past? Do you see any distinction in that? I see a distinction that there was criticism in the past for a specific portion of what they did in the letter, which was acting, speaking as the department outside the chain of command. That was a specific past conduct. And then the, it was expanded at the trial, I think, by the plaintiffs, but I think the jury recognized that it wasn't the case. The plaintiffs, as far as the future reprimand, was not that they couldn't ever speak to any public official again in their lives or anything like that. It was they couldn't speak on behalf of the department. So I think that was a, it was a much more limited aspect of looking forward than it was attempted to be portrayed by the plaintiffs at the trial. And I think that the jury understood that. They understood that in this setting, this was not a classic reprimand where there were going to be repercussions from it. The real, within hours of the meeting, the only one who really had repercussions was the director of the department, who immediately got a letter from the unions head saying that she, her job was threatened, threatening to have political and other consequences to her for even sending the letter and having the meeting. So I think it's separate from a, the classic case of reprimand that the other court, that the other case. And so would you, I mean, in drawing that distinction, since it is included in these cases, you want to propose a definition for what constitutes a classic case of reprimand that, that, that should go to the, that shouldn't go to the jury? Or tell me if you resist that, that way of thinking about it. So I would resist that. I would say here, where there was a reprimand, where this jury determined that it would not have had a adverse impact on similarly situated individuals of ordinary firmness, then that would not constitute a classic reprimand that would be sufficient to, as a matter of law, determine this issue. And I, and I think that's why this setting is very much different than others, because the jury was given this issue twice and had decided in favor of the defense. So I think that's a, that's a, that's a critical distinction here. Can I ask you on, on the, on the question, which I think is raised, of whether they're speaking as a citizen rather than as an employee. You do put some emphasis, and I think I have an intuition that agrees with you, that it matters that at least arguably the speech appeared to be coming from the, the probation officers in their official capacity, or maybe could be misperceived as speaking on behalf of the department. What, where does that fit in the doctrinal analysis, given what we understand the test to be from the cases? Was the speech made pursuant to their official duties, and is there relevant civilian analog? It's a little bit hard for me to see how that intuitive point fits in the analysis. Okay. So the case is, there was a critical point made during the trial that the, the letter was not written on letterhead of the Department of Probation, as if, if it was written on letterhead, then it would be clear that the employees were speaking on behalf of the department. I think in this case, they, they knew enough not to put it on letterhead, but they did everything else that they could to emphasize that it was written on behalf of the department. Once they're doing that, it distinguishes itself from the other cases, where if they're writing on behalf of the department, using letterhead, or in effect using letterhead, even though they didn't use letterhead, but using our department, introducing themselves as members of the Rockland County Department of Probation, that under those circumstances, that they were speaking not as private citizens, but in their public capacity. And under the cases, if they're speaking in a public capacity, then you're not, then, then the protections are not afforded. But do you agree that, that the cases lay out a two-step task for this prong, and it's, was the speech made pursuant to their official duties? Mm-hmm. Yes. And did the speech have a relevant civilian analog? So where, where are you putting this as part of the? So I think it's as part of their duties. I understand that the civilian analog, yes, they were outside the chain of command, but that was a different, that's a different analysis. But I think as they were speaking as public employees, so therefore, that, that's a critical distinction here. I'm sorry, I missed that last one. That they're speaking as public employees, and that would be the critical distinction. Uh-huh. Well, I mean, we, yeah. I mean, the, the funny thing about the law here is it seems on that question, if they are speaking to their, pursuant to their official duties, it's not protected. But if they aren't speaking pursuant to their official duties, which is the case here, then at least it meets that prong of the task. Yes. I agree, it's a complicated standard. And it's also, they had an opportunity to speak to the county executive on this issue, which was the appropriate mechanism to do it. But then they went outside that and spoke over them. So I think that augurs in favor. And they went outside that and spoke what? They sent the letter directly to essentially the political competitors of the county executive in an effort to, I think, politically affect the situation, which I think took it again outside of what they should have been doing. So it wasn't part of their official duties, but I think they were giving the impression, and the legislator, the legislature interpreted it as, the letter from the probation department. So I think that also, that emphasis shows that what they intended to do purposefully was speak as public employees on this issue. Okay. Thank you. You have three minutes for rebuttal when you come back. Thank you. We'll hear from Mr. Charney. Good morning. May it please the court, Nathaniel Charney, Charney and Wheeler on behalf of the plaintiffs at police in this matter. Judge, I thought I'd give my answer to your question about the public speech. And I think the notion of they may have been perceived by third parties as speaking on behalf of the probation office does not fit in that rubric that we were discussing. It doesn't. Where it fits is in a Garcetti defense to what the county could have done to them for allowing that situation to happen where they were misperceived as speaking on behalf of the probation office. Garcetti stands for the proposition that you can have reasonable rules and regulations protecting speech, and you can implement them, and you can reprimand people for violating them. They waived their Garcetti defense. It was never raised as an affirmative defense in any of this case. From the beginning to the end, Garcetti never presented itself. That's where it would have fit. They never raised it. Instead, we're in a straightforward First Amendment retaliation analysis. Well, suppose the absence of letterhead and other circumstances would not cause someone to believe that they were speaking on behalf of the department. But what if they were speaking as probation employees? Well, that is foundational to the First Amendment. We want public employees to speak from their base knowledge on important matters of public concern, which is what they did here. They have unique knowledge. They shared it in a civilian analog through a legislature. And as Judge Brattle cites, and I cite in my brief, that's foundational. We don't want public employees to stifle their speech on what they know. That's the whole point. And I would add also, Judge, there's more than just no letterhead. The law is that the speech has to be solely on a private employment concern. This is clearly an obvious case. They're also talking about access by clients and the public to a remote location. Correct. And also, just to throw a little bit more, to gild it a little bit, each of the witnesses, each of the plaintiffs did testify unrebutted. There's no contradiction to this, that the way they signed the petition clearly indicates that they were speaking not as probation officers. There's a way that these individuals, that POs in Rockland County, sign. None of them signed that way, and they did that on purpose. Is it fair to say that the letter that they submitted goes to their ability to perform their job? The key thing that's driving their argument in the letter is their ability to perform their job and how the move will disrupt that because of the nature of the collaboration and splitting of the units. So isn't that a classic example of speech that isn't protected because it goes to the performance of their job? No. If all it was was about there's not enough toilet paper in the bathrooms and the water fountain water is not cold enough and the emergency doors don't lock, if that's what it was about, then perhaps that argument would stand. But it was about so much more. It's about this is an irresponsible financial decision to make. This will be hurtful to the clients who are the probationees, the ones who have their garbage bags when they get out of jail and now they have to go take a bus across town if they do the move. The examples you gave, that's a dividing line between whether it's a matter of public concern or not, which is not an issue, I think. That's correct. That wasn't raised on appeal. It's not on appeal. What is on appeal is, are they speaking as citizens rather than solely as public employees? You're absolutely right, Judge. I appreciate that. It's not part of their job duties to write to the legislature. That's an important component in the legal analysis. There is a civilian analog. Because again, foundational to the First Amendment is that public employees have unique knowledge. They follow a civilian analog to share their unique knowledge. And they present it to the legislature, which is nowhere near their job. A little bit just coming back to my first question then. So if they had put this on department letterhead and said we're speaking on behalf of the department in our official capacity, I think your answer is under the posture that's before us, none of that would matter. Well, at least there'd be an argument that there was evidence that this was solely speaking as probation officers. That would be at least an argument they would make. I would argue that even if it was on letterhead, and even if they signed it in their official unique capacity, it would still be about lots of things through a civilian analog, not solely about employment matters. Making it public speech. On material adverse employment action, I have the same questions I asked your opposing counsel. Is it your position that because that word reprimand is used in some of the cases as adverse actions as a matter of law, that we just, because this is arguably a reprimand, or how do you think about the question of what goes to the jury and what doesn't in light of that line of cases? Okay. So my answer to that is that this is a reprimand. The Second Circuit has repeatedly stated that reprimands are adverse actions. Now think about it in this context. Think about it that the reprimand itself, which is the reprimand itself is in the record at 2834, Joint Appendix 2834. It ends with the following sentence, and I had it up on my computer, but it shut down. It ends with something like the last sentence says, if you do this again, you may be subject to discipline. The this in that sentence, if you do this again, you will be subject to discipline. The this in that sentence is engage in adverse employment action, but it leads it to the jury. I guess on most extreme cases, it leads it to the jury to decide whether the reprimand was something that would dissuade a reasonable employee from speaking the employee's mind. As a matter of law, a reprimand is an adverse action. If you get reprimanded for engaging in First Amendment protected speech, that is an adverse action. And so it doesn't go to the jury no matter what the reprimand says or how it's formulated? Absolutely. So a letter that says, you know, not sure. This was a little close to the line. Be careful next time. That doesn't go to the jury if it's a reprimand. It doesn't go to the jury if it's an adverse action. If it's a reprimand that says, don't do this again or else. That's a reprimand. You're being reprimanded for doing this. Don't do it again. And the this is constitutionally protected speech, then as a matter of law, it's an adverse action. Whether or not it would dissuade a reasonable employee from speaking that employee's mind? Isn't that what this whole thing is about? Being told don't, don't engage. Your answer is yes. It doesn't matter. It doesn't matter whether it would dissuade a reasonable employee. If the reprimand states don't engage in constitutionally protected First Amendment speech again or else, then it is as a matter of law a reprimand. And I want to point something out that's kind of. But it went to the jury. Did you make a motion for summary judgment on this point? I guess you can't because it's all a ball of wax. But there is evidence here that only two employees were terminated in the prior 30 years. How could any of these employees have had a reasonable fear that they were going to be caused them to shut down in the expression of their views? Well, it's not a subjective test. It's an objective test. It's what a reasonable person in this context feel. And a reprimand elevates them the next step of the disciplinary chain, one step closer to serious, far more serious disciplines such as suspension or discharge. So it is necessarily adverse when you are. A reprimand is adverse. A reprimand for engaging in constitutionally protected First Amendment speech violates the Constitution. I mean, wouldn't this be just what a jury should decide? I mean, jurors sit there and they decide securities fraud claims that in cases they have no knowledge of. This is, you know, this is what the average juror would know best, and that is whether a reasonable employee would be intimidated by what the employer has done. Judge, the rule allows judgment as a matter of law when the evidence is so overwhelming that you can come to other conclusions. I want to point out something in the record that we haven't talked about, which is at Joint Appendix 2954. So Joint Appendix 2954 is a letter from the county attorney. So the union sends a letter. That's 2953. The union sends a letter and says, get that out of their personnel files. This is inappropriate, etc. The letter that they get back, that the plaintiffs get back, is at 2954. It is a remarkable letter. Now, it takes the memorandum of warning, the reprimand. It takes it and it doubles down. And it says, please be advised that the above-reference warning memo will not be rescinded. It's underlined. It goes on to say they knowingly committed violations and any repetition may result in formal disciplinary action being taken against them. It says, please be advised that none of them are putting their personnel files on purpose because we want this to be evergreen. We want this to be hanging over their heads forever, as long as they work for the county. If it was just a memorandum of warning. So your argument is that that would dissuade a reasonable employee. Objectively speaking, how could it not? And then you have a unanimous jury of people who are, let's face it, almost all employees, and they don't think so. Judge, I speak in my brief as to my speculation as to how that went down, but we don't know what was in the mind of the jury. Maybe they didn't like the plaintiffs. Maybe they liked Mr. Parisi. He's an affable fellow. I mean, who knows? He did a good job in his closing argument. Who knows? Who knows is, you know, is exactly the point. But they spoke on this issue. And look, they have union protections. Do they have civil service protection as well? The union protections. The jury could find, could decide that this was a materially adverse action. I mean, clearly. But they didn't, and then the question is, is there evidence on which they could have gone the other way, and the fact that nobody gets fired in this place for decades, and that their union protections could have caused the jurors, why couldn't that cause the jurors to decide that reasonable people like themselves would not be intimidated? Well, that may be, Your Honor, and I certainly hope the other two panel members don't share your opinion, but even if that is your opinion. Well, I'm asking you a question. I'm intending that way, but I haven't decided. My answer is that that's not the only way I win this, the plaintiffs win the appeal. The other way the plaintiffs win the appeal is if Judge Farrell is right, and that the evidence is so overwhelming that this was an adverse action as defined by the law. So overwhelming. And if you look, as I said, at Mr. Fortunato's letter at 2954, and you compare that with the reprimand letter at 2834, and you compare it with the emergency meeting email at 2964, when you put those three things together, it is overwhelming evidence that these individuals were told, don't do it again. If you do it again, you will be subject to discipline. The it in that sentence is engage in constitutionally protected First Amendment speech. What if it said just don't do it again? Go to the jury? It's not our facts. Well, I get paid the big bucks to play a little bit with your facts. If it said don't do it again and didn't mention future, well, it's the first step in the disciplinary process as the judge. So that would not be a reprimand as a matter of law? That is a reprimand as a matter of law. It's a disciplinary step in the process where you're being reprimanded. Don't do it again. Excuse me for pointing. That's all right. But so I just want to make sure I understand your position. So if the letter just – if it said don't do it again and it is protected speech but didn't say or you'll be terminated, the don't do it again, so one, does it go to the jury? Does it go to the jury on the question of materially adverse employment action? That's my question. I believe so, yes. So it goes, and then in that posture you're asking – I apologize, Judge. I gave you the wrong answer. It doesn't go to the jury. As a matter of law, that is a reprimand. You're being reprimanded for engaging in constitutionally protected speech. As a matter of law – So if it says like try not to do it again, go to the jury? I think that would go to the jury. And if there was a meeting that wasn't called an emergency meeting and all red letters and yelling and reprimanding and letters in the filing instead of meeting where the defendant said this was really uncool. I wish you hadn't done this. I'm very upset about it. There's case law that says that that's not an adverse action, and that actually seems to me to be the proper way this could or should have been dealt with rather than a formal reprimand that says don't do it again. You listed a list of things on one side of the balance about why there's overwhelming evidence. But to Judge Jacobs' point, there was evidence in the record about the history of discipline at this agency. There was evidence in the record about the various grievance steps that would need to be taken. So why isn't this just a question of balancing as opposed – if it's overwhelming, that means it's overwhelming over something, right? It wasn't the only evidence. So why isn't that well within the province of the jury to weigh what you characterize as overwhelming for the jury to have a different view about whether it's overwhelming or not? The answer is because Second Circuit precedent established for decades is that if you are reprimanded and told don't do it again, don't engage in constitutionally protected speech again, as a matter of law, that is a violation of the Constitution. That necessarily chills an objective person. It doesn't matter how many safeguards are in place. If you are – if a letter is issued signed by your boss saying don't do it again or else you will be disciplined, that is a reprimand for engaging in constitutionally protected speech, and it's retaliation. It chills necessarily as a matter of law. Now, maybe there's people out there who wouldn't be chilled, who would be all gangster about it and say, well, I don't care about that. I'm going to do it anyway. That may very well be the case, but that's not the standard. The standard is an objective standard, and when the boss says to you don't do it again or else and it is constitutionally protected speech, I think the Second Circuit is – I think your honors have spoken for decades that that is exactly what the Constitution protects against. All right. Thank you, counsel. Thank you very much. We'll hear Mr. Parisi for three minutes on her bill. Thank you. I would just say that there was evidence in the record to support the jury's determination, and I think that's the critical analysis here. That record did include the letter that plaintiff's counsel pointed out that was an ill-advised letter. That employee doesn't work at the county anymore, but that letter is out there. But imagine this scenario if we can. If that letter wasn't sent, would plaintiffs have a claim? I don't think so. They certainly wouldn't have a claim. They wouldn't be allowed to go to the jury, and I think if that was – and in actuality that letter was sent, well, what happened? What happened to it? Nobody was threatened by it because the union stepped in and took care of the situation and protected it, and it's now been, I think, six-plus years where nothing has ever happened as a result of that. The memo wasn't put in files, was never used against another. Well, I mean the fact that nothing has happened in six-plus years is neither here nor there in terms of the jury verdict. Well, I'd say a couple of things. Nothing happened before that, as I believe as you pointed out. It was not a place where you got terminated. Yeah, but the nature of the threat that your adversary is talking about is basically don't do it again. So if people are intimidated, then they won't do it again, in which case nobody will be fired. So I'm not sure where that gets you. But under these circumstances, the jury found that ordinary people of ordinary firmness would not be so – would not have been intimidated. That is part of this record. A jury has made that conclusion. So in those circumstances, it's reasonable for the jury to decide that there was no adverse impact to these employees. If there's no questions? Okay. Thank you. Thank you to both counsel for your briefs and arguments. We appreciate it. Thank you. Take the matter under advisement.